# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

LUCINDA BYRON and LATOYA LEWIS,

      Plaintiffs,

v.                                        Case No:   6:23-cv-1645-JSS-LHP

AVANT HEALTHCARE PROFESSIONALS, LLC,

      Defendant

_____

## ORDER

This cause came on for consideration without oral argument on the following motion filed herein:

> **MOTION:** NON-PARTY AYA HEALTHCARE, INC.'S MOTION TO QUASH SUBPOENA DUCES TECUM, OR IN THE ALTERNATIVE, MOTION FOR PROTECTIVE ORDER (Doc. No. 94)
>
> **FILED:** October 21, 2024
>
> **THEREON** it is **ORDERED** that the motion is **GRANTED in part and DENIED in part**.

## I.  BACKGROUND.

At this point, this case concerns claims by Plaintiffs Lucinda Byron and Latoya Lewis, on behalf of themselves and a putative class, under the Trafficking Victims Protections Act ("TVPA") and the Racketeer Influenced and Corruption Act ("RICO") against their former employer Defendant Avant Healthcare Professionals, LLC, a recruitment and staffing agency, alleging that Defendant's business practices and employment conduct violated these statutes.  Doc. Nos. 44, 86; *see also* Doc. No. 77.   Plaintiffs' claims under the Fair Labor Standards Act ("FLSA") and Florida Minimum Wage Act ("FMWA"), as well as an unlawful restraint of trade claim, have been dismissed.  *Id.*   Defendant has answered the operative complaint. Doc. No. 89.   Discovery is ongoing.   Doc. No. 58; *see also* Doc. No. 91.

As relevant to the present dispute, on October 7, 2024, Defendant served on third-party Aya Healthcare, Inc., a post-Avant employer of Plaintiff Lewis, a subpoena requesting the following categories of documents:

> (1) Latoya Lewis' complete personnel file, including but not limited to her application for employment/placement, interview and/or application notes, resume, any job/placement offer letters (including but not limited to any placement facility assignment letters and any salary/bonus letters), details of her job/placement offer, any documents that reflect her work duties, and any termination of employment/placement documents (if applicable); her time and attendance records; and her payroll and benefit records, including but not limited to paystubs and W-2s.

> (2) Any and all documents that identify the pay rates and factors used in determining the differing rates of pay for registered nurses employed and/or placed with or by Aya Healthcare, Inc., and who worked on the same unit(s) and/or department(s) as Latoya Lewis and/or performed substantially the same duties as Latoya Lewis ("relevant pay rates"). These documents would include, but are not limited to, documents that describe or list what factors were used to determine the relevant pay rates such as seniority, merit increases, years of U.S. experience as a registered nurse, shift, and full-time status vs. temporary status.

Doc. No. 94, at 3; Doc. No. 94-1, at 4 (subpoena Exhibit "A"). The subpoena commands the production of documents in Costa Mesa, California by Monday October 28, 2024. Doc. No. 94-1, at 1.

By motion filed October 21, 2024, non-party Aya Healthcare, Inc. (hereinafter, "Aya"), moves to quash the subpoena in toto, or alternatively, for a protective order prohibiting the discovery. Doc. No. 94. According to Aya, the subpoena is a "fishing expedition" into the confidential, proprietary, and trade secret information of Aya, which is a direct competitor of Defendant, and the subpoena seeks information wholly irrelevant to this lawsuit because Plaintiff's FLSA and FMWA claims have been dismissed, rendering her subsequent employment records irrelevant in this case. *Id.*

- 3 -

Defendant has filed a timely[1] response to Aya's motion. Doc. No. 99. Defendant contends that this Court lacks jurisdiction to quash the subpoena because it requires compliance in California. *Id.* at 2. As to the protective order, Defendant argues that the information sought by the subpoena is relevant to Plaintiffs' RICO claims, such that Plaintiffs point to wages received from post-Avant employers, like Aya, to support the wage-suppression/injury element of their RICO claims. *Id.*; *see* Doc. No. 44. Defendant further contends that wage information from staffing agencies like Aya is necessary to address the wage suppression claim. Doc. No. 99, at 2–3. To the extent that the subpoena would encompass any of Aya's confidential information, Defendant says that it offered Aya a confidentiality agreement and production of these materials under an "Attorneys' Eyes Only" provision. *Id.* at 3–4.[2]

Plaintiffs have also filed a timely response in partial support of Aya's motion. Doc. No. 100. Specifically, Plaintiffs state that they have no objection to production of the second paragraph of the requested documents. Doc. No. 100, at 2, 4. However, as to the first paragraph, Plaintiffs contend that the subpoena is

---

[1] *See* Doc. No. 95.

[2] Aya's position on such confidentiality agreement is not clear from the parties' filings. Doc. Nos. 94, 99.

overbroad in part, such that any portions of the personnel file unrelated to compensation, *i.e.*, "complete personnel file, including but not limited to her application for employment/placement, interview and/or application notes, resume, any job/placement offer letters, details of her job/placement offer, any documents that reflect her work duties, and any termination of employment/placement documents (if applicable)" are not relevant to the question of whether Defendant violated the law or their claimed damages and the subpoena should be limited in this regard. *Id.* at 2, 3–4; *see also* Doc. No. 100-1 (Plaintiffs' objections to subpoena served by Defendant on Aya and others). Plaintiffs also argue that the non-compensation materials contained in the personnel file are duplicative of other written discovery (specifically Interrogatory 3 to Plaintiff Lewis), and that the non-compensation material request was designed by Defendant to harass and intimidate Plaintiffs. Doc. No. 100, at 4–5; *see also* Doc. No. 100-2.

Defendant was permitted to file a response/reply to Plaintiffs' response. Doc. No. 105; *see also* Doc. Nos. 101–02. In that filing, Defendant rests on its initial briefing with regard to Plaintiffs' relevance concerns, and counters only Plaintiffs' arguments regarding duplication and harassment. Doc. No. 105.

The matter is now fully briefed and ripe for consideration. Upon review, and for the reasons set forth below, Aya's request to quash the subpoena is due to

be denied, while the motion for protective order will be granted in part and denied in part.

## II.     MOTION TO QUASH.

Aya first seeks to quash the subpoena under Federal Rule of Civil Procedure 45. Doc. No. 94. However, "[u]nder the 2013 amendments to Federal Rule of Civil Procedure 45, the district court with jurisdiction to enforce and to quash subpoenas is the 'court for the district where compliance is required,' which may or may not be the court that issued the subpoena." *Hunter v. ADP Screening*, No. 6:15-cv-845-Orl-31TBS, 2016 WL 7732538, at *1 (M.D. Fla. May 3, 2016) (citations omitted); *see* Fed. R. Civ. P. 45(d)(1), (d)(3), (g) (providing that motions to enforce, quash, or modify a subpoena, and contempt proceedings related thereto, must be filed in "the court for the district where compliance is required").

Here, the subpoena seeks compliance in Costa Mesa, California. Doc. No. 94-1. Accordingly, the Middle District of Florida is not "the district where compliance is required." *See Hunter*, 2016 WL 7732538, at *1 (denying without prejudice motion to enforce subpoenas that commanded production in and appearance at depositions in Rockville, Maryland and Pasedena, California); *Orange Lake Country Club, Inc. et al., v. Reed Hein & Assocs., LLC, et al.*, No. 17-cv-1542-Orl-37KRS, Doc. No. 53 (M.D. Fla. Dec. 13, 2017) ("The request to quash or modify the subpoena is filed in the wrong court. Federal Rule of Civil Procedure 45(d)(3)(A)

- 6 -

provides that the district where compliance is required is the court that considers motions to quash or modify subpoenas. The subpoena to Ms. Freeman calls for compliance in Mercer Island, Washington, which is not within this district.")

Accordingly, Aya's request to quash the subpoena is due to be denied without prejudice. *See id.*

### III. MOTION FOR PROTECTIVE ORDER.

Aya alternatively moves for a protective order barring the discovery sought by the subpoena. Doc. No. 94. This request is governed by Federal Rule of Civil Procedure 26, which Aya can invoke. *See* Fed. R. Civ. P. 26(c) (permitting non-parties to seek a protective order in the court where the action is pending).

A party or person from whom discovery is sought may seek a protective order protecting them from "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). The party or person moving for a protective order must show "good cause" exists for the court to issue such an order. *Id.* "To determine whether there is good cause, a court must balance 'the party's interest in obtaining access against the other party's interest in keeping the information confidential.'" *Hutchinson v. Pyros*, No. 2:24-cv-201-KCD, 2024 WL 4100736, at *1 (M.D. Fla. Aug. 9, 2024) (quoting *Chi. Trib. Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1313 (11th Cir. 2001)). "The party requesting a protective order must make a specific demonstration of facts in support of the request, rather than

conclusory or speculative statements about the need for a protective order and the harm which will be suffered without one." *Id.* (quoting *New World Network Ltd. v. M/V NORWEGIAN SEA*, No. 05-22916 CIV, 2007 WL 1068124, at *1 (S.D. Fla. Apr. 6, 2007)).

Upon consideration, the Court finds unpersuasive Aya's argument that *all* documents sought by the subpoena would be irrelevant in this litigation. In particular, and as Defendant argues and Plaintiffs do not dispute, wage/compensation information related to Plaintiffs' employment post-Avant could be relevant to the RICO claims, as could market data regarding similarly situated workers. Doc. Nos. 99, 100. In their RICO claims, Plaintiffs allege injury to business or property because Defendant used misrepresentations to reduce and suppress wages below those of similarly situated workers. Doc. No. 44 ¶¶ 146, 233. Plaintiffs further allege that the wage suppression harm "can be assessed based on market data," as well as "their increased wages after they departed from Avant and began working for new employers." *Id.* ¶ 146. So, the information sought by the second paragraph in Exhibit "A" of the subpoena is relevant. Doc. No. 94-1, at 4. *See also Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 709–12 (11th

Cir. 2014) (wage suppression is a cognizable harm to business or property under RICO, but assessment depends on market data).[3]

As it relates to the first paragraph of Exhibit "A" to the subpoena, and as it relates to Plaintiff Lewis's compensation while working for Aya, the Court also finds the information relevant based on the allegations of the operative complaint, which relevance Plaintiffs do not dispute. *See* Doc. No. 44 ¶¶ 146, 233; *see also* Doc. No. 100. But besides addressing factors that dictated Plaintiff Lewis's pay rate and her wage data, and the allegations of the operative complaint regarding wage suppression, Defendant offers no persuasive explanation as to why documents in the personnel file outside of those related to Ms. Lewis's compensation are relevant

---

[3] The cases cited by Aya are distinguishable, and none were akin to the facts of this case, to include claims under RICO based on wage suppression. Doc. No. 94, at 8–9 (citing, *inter alia*, *Maxwell v. Climate First Bank*, No. 8:23-cv-457-JSM-UAM, 2023 WL 6123518 (M.D. Fla. Sept. 19, 2023) (employment discrimination case concerning subpoena on subsequent employer that the court found facially overbroad and encompassing irrelevant information, stating the defendant could re-issue); *Gonzalez v. Springs of Lady Lake ALF, L.L.C.*, No. 8:10-cv-1693-T-17AEP, 2011 WL 13302410 (M.D. Fla. Mar. 10, 2011) (addressing after-acquired evidence doctrine and overbroad subpoenas on former employers in employment discrimination case); *Goulet v. Mederi Caretenders VS of SW FL, LLC*, No. 2:10-cv-215-FtM-36SPC, 2011 WL 652851 (M.D. Fla. Feb. 14, 2011) (*denying* motion to quash subpoena on subsequent employer in FLSA case); *Premer v. Corestaff Servs., L.P.*, 232 F.R.D. 692 (M.D. Fla. 2005) (concerning after-acquired evidence doctrine); *Porter v. Ray*, 461 F.3d 1315 (11th Cir. 2006) (dealing with neither RICO nor production of personnel files)); *see also Davison v. Novartis Pharms. Corp.*, No. 8:21-cv-1782-WFJ-AAS, 2022 WL 2193156 (M.D. Fla. June 17, 2022) (cited for the general principle that discovery must be relevant to the claims in the litigation).

in this case. Doc. No. 99, at 6.[4]  *See Fadalla v. Life Auto. Prod., Inc.*, 258 F.R.D. 501, 504 (M.D. Fla. 2007), *on reconsideration in part*, No. 3:07-mc-42-J-32MCR, 2008 WL 68594 (M.D. Fla. Jan. 4, 2008) (proponent of subpoena has the burden of demonstrating requests are relevant); *see also Kaiser Aluminum & Chem. Corp. v. Phosphate Eng'g & Const. Co.*, 153 F.R.D. 686, 688 (M.D. Fla. 1994) ("For a protective order to be granted, a party must show that the information is confidential and that the disclosure would be harmful. *The burden then shifts to the party seeking disclosure to show that the information sought is relevant and necessary at this point in the litigation.*" (emphasis added)). Accordingly, the Court will grant the motion for protective order to the extent that it will limit the first paragraph of Exhibit "A" of the

---

[4] Defendant only argues that:

> Ms. Lewis's personnel file at Aya likely holds details about her position and pay that bear on her suppressed wages theory. If a pay disparity exists between Avant and Aya, it could stem from a laundry list of factors unrelated to racketeering, including Ms. Lewis's duties, role, and responsibilities at Aya; her employment terms and conditions; any performance-based pay increases she received; non-monetary benefits she received; and any other factors that dictated Ms. Lewis's pay. Avant is entitled to understand these facts, and the information is most likely to lie in her personnel file.

Doc. No. 99, at 6. Defendant rests on this argument in its reply. Doc. No. 105, at 3 n.1. Absent more, or some legal authority supporting Defendant's position that non-compensation materials would be relevant in a case such as this, and for the remaining reasons discussed in this Order, the Court finds this explanation lacking as to materials contained in the personnel file unrelated to compensation.

subpoena to production of documents bearing on Ms. Lewis's compensation contained in her Aya personnel file. *See* Fed. R. Civ. P. 26(c)(1)(D) ("The court may, for good cause, issue an order . . . forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters.").

Finally, as to Aya's contention that compliance with the subpoena would include documents that are confidential, proprietary, and trade secrets, the Court notes Defendant's statement that it "has proposed entering into a confidentiality agreement with Aya, designating Aya's competitively sensitive information as 'Attorneys' Eyes Only,' agreeing to not use Aya's confidential information outside the scope of this litigation, and agreeing to destroy the material when this litigation ends, through appeal." Doc. No. 99, at 11. The Court finds that such procedure should resolve Aya's concerns, and that any potential relevance of the information outweighs the potential harm from disclosure. *Cf. In re Pinchuk*, No. 13-CIV-22857, 2014 WL 1745047, at *2 (S.D. Fla. Apr. 30, 2014) ("Any concerns about confidentiality issues, including trade secrets, may be resolved via entry of a protective order that allows for the designation of certain documents as Confidential or for Attorneys' Eyes Only."). Accordingly, the Court will order conferral on the issue of a confidentiality agreement, and should the parties be unable to come to an agreement, the Court will enter a protective order on its own accord.

The remainder of Plaintiffs' arguments regarding duplication and/or harassment, which are related to non-compensation materials in the personnel file, *see* Doc. No. 100, are moot given that the Court will limit the first paragraph of Exhibit "A" to the subpoena to production of documents bearing on Ms. Lewis's compensation that are contained in her personnel file.   Thus, the Court declines to further address these arguments.

## IV.   CONCLUSION.

For the reasons set forth herein, Non-Party Aya Healthcare, Inc.'s Motion to Quash Subpoena Duces Tecum, or in the Alternative, Motion for Protective Order (Doc. No. 94) is **GRANTED in part and DENIED in part** as follows:

1. Aya's request to quash the subpoena is **DENIED without prejudice**.

2. Aya's request for a protective order related to the subpoena is **GRANTED in part**.

    a. Within **fourteen (14) days** of this Order, the parties shall confer with Aya on a negotiated confidentiality agreement governing the production of documents listed in the subpoena, as limited by this Order.   On or before expiration of this **fourteen (14) day** deadline, the parties and Aya shall file a **joint** notice with the Court stating whether they have entered into a confidentiality agreement.   Should the parties be unable to reach agreement, the parties may submit proposed

confidentiality orders with the joint notice for the Court's consideration.

b. Within **fourteen (14) days** of entry into a negotiated confidentiality order or entry of a confidentiality protective order by the Court, Aya shall produce to Defendant the documents listed in the subpoena and as limited by this Order, as follows:

- Any and all documents contained in Latoya Lewis's personnel file bearing on Latoya Lewis's compensation while employed by Aya Healthcare, Inc., including, but not limited to, those related to job offers, salary, bonus, payroll and benefits, paystubs, W-2s, and time and attendance records.

- Any and all documents that identify the pay rates and factors used in determining the differing rates of pay for registered nurses employed and/or placed with or by Aya Healthcare, Inc., and who worked on the same unit(s) and/or department(s) as Latoya Lewis and/or performed substantially the same duties as Latoya Lewis ("relevant pay rates"). These documents would include, but are not limited to, documents that describe or list what factors were used to determine the relevant pay rates such

as seniority, merit increases, years of U.S. experience as a registered nurse, shift, and full-time status vs. temporary status. *See* Doc. No. 94, at 3; Doc. No. 94-1, at 4.

3. Aya's request for a protective order related to the subpoena, including its request for fees and costs is **DENIED in all other respects.**

**DONE** and **ORDERED** in Orlando, Florida on November 18, 2024.

*[signature]*

LESLIE HOFFMAN PRICE
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties